IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VICTOR RODRIGUEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| THE CITY OF GRAND PRAIRIE and § | |
| JORJA CLEMSON, JIM SWAFFORD, § | |
| LILA THORN, RICHARD FREGOE, § | CIVIL ACTION NO. |
| TONY SHOTWELL, JEFF § | |
| WOOLDRIDGE, JEFF COPELAND, § | |
| GREG GIESSNER, and RON JENSEN, in § | |
| their official capacities, § | |
| § | |
| Defendants. § | |

**COMPLAINT SEEKING DECLARATORY AND
PERMANENT INJUNCTIVE RELIEF CONCERNING
VIOLATIONS OF SECTION 2 OF THE VOTING RIGHTS ACT**

Victor Rodriguez ("Rodriguez" or "Plaintiff") files this Complaint Seeking Declaratory and Permanent Injunctive Relief Concerning Violations of Section 2 of the Voting Rights Act ("Complaint") against the City of Grand Prairie ("City"); and Jorja Clemson, Jim Swafford, Lila Thorn, Richard Fregoe, Tony Shotwell, Jeff Wooldridge, Jeff Copeland, Greg Giessner, and Ron Jensen, each in his or her official capacity as a voting member of the Grand Prairie City Council ("GPCC") (collectively, "Defendants") as follows:

**I.**

**PRELIMINARY STATEMENT**

This Complaint challenges the City's system for electing members of the GPCC (the "Electoral System"). The paramount concern for any municipality when assessing its electoral system should be whether every citizen is afforded a fair opportunity for equal participation. It is axiomatic that "[n]o right is more precious in a free country than that of having a voice in the

election of those who make the laws under which, as good citizens, we must live."[1] The City, unfortunately, abandoned that principle in favor of self-interest and maintaining the existing power structure. Indeed, in recent redistricting efforts, the GPCC declared that its primary goal was "to rearrange the districts to keep Council Member districts almost the same." That unabashed self-interest illustrates the City's indifference toward the rights of its exploding Latino population which, despite constituting a substantial percentage of the voting bloc in the City, has been unable to elect the Latino candidate of its choice for over 20 years.

This situation has continued despite the fact that courts across the country, including this Court, have consistently found that electoral systems like the City's violate Section 2 of the Voting Rights Act of 1965 (the "Act"), 52 U.S.C. § 10301. In the past three years alone, this Court has struck down at least three electoral systems whose characteristics mirror those of the City's Electoral System. Unfortunately, the City has chosen to ignore the Court's counsel to similarly situated municipalities. Accordingly, Rodriguez has no alternative but to seek redress with the Court.

## II.

## JURISDICTION AND VENUE

1. This is an action for injunctive and declaratory relief under the Act. Accordingly, jurisdiction is proper because: (1) 28 U.S.C. § 1331 grants district courts original jurisdiction over matters arising under the laws of the United States; (2) 28 U.S.C. § 1343(a)(3) grants district courts original jurisdiction over matters providing for the equal rights of citizens within the jurisdiction of the United States; and (3) 28 U.S.C. § 1343(a)(4) grants district courts original

---

[1] *Wesberry v. Sanders*, 376 U.S. 1, 17-18 (1964).

jurisdiction over matters under any act of Congress providing for the protection of civil rights, including the right to vote.

2. The Northern District of Texas is the proper venue for this action. Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in a district where any defendant resides, if all defendants reside in the state where the district is located. Here, Defendants all reside in Grand Prairie, Texas, which is in the Northern District of Texas.

### III.

### PARTIES

**A.   Plaintiff**

3. Rodriguez is a Latino, United States citizen, and registered voter residing at 2568 Varsity Lane, Grand Prairie, Texas 75051.

**B.   Defendants**

4. The City is a Home Rule City governed by the laws of the State of Texas and within the framework of the City Charter. The GPCC is the legislative body that was created pursuant to Tex. Loc. Gov't Code Ann. § 21.001 *et seq.* The City may be served with process by serving Mayor Ron Jensen, who resides at 4349 Matthew Road, Grand Prairie, Texas, 75052.

5. Jorja Clemson represents District 1, is a resident of Grand Prairie, and may be served with process at 13 Heritage Ct., Grand Prairie, Texas, 75050.

6. Jim Swafford represents District 2, is a resident of Grand Prairie, and may be served with process at 2030 Wellington Dr., Grand Prairie, Texas, 75051.

7. Lila Thorn represents District 3, is a resident of Grand Prairie, and may be served with process at 1629 Avenue F, Apt A, Grand Prairie, Texas, 75051.

8. Richard Fregoe represents District 4, is a resident of Grand Prairie, and may be served with process at 2709 Spartacus Dr., Grand Prairie, Texas, 75052.

9. Tony Shotwell represents District 5, is a resident of Grand Prairie, and may be served with process at 309 NE 31st St., Grand Prairie, Texas, 75050.

10. Jeff Wooldridge represents District 6, is a resident of Grand Prairie, and may be served with process at 1717 W. Interstate 20, Grand Prairie, Texas, 75052.

11. Jeff Copeland represents Place 7, is a resident of Grand Prairie, and may be served with process at 3713 Novus Ct., Grand Prairie, Texas, 75052.

13. Greg Giessner represents Place 8, is a resident of Grand Prairie, and may be served with process at 549 Winston St., Grand Prairie, Texas, 75052.

14. Ron Jensen is the Mayor of Grand Prairie, is a resident of Grand Prairie, and may be served with process at 4349 Matthew Rd, Grand Prairie, Texas, 75052.

## IV.

## FACTS

### A. Rodriguez Is A Resident Of The City And A Victim Of The City's Illegal Electoral System.

12. Rodriguez, a Latino, has been a resident of the City since 2003, and is a citizen of the United States. Accordingly, Rodriguez is eligible to vote in the GPCC elections. Unfortunately, Rodriguez is also a victim of an electoral system which denies him and other Latinos an equal opportunity to elect representatives of their choice.

### B. Grand Prairie: A City In Need of Change

13. In 1990, the City had 99,916 residents. The most recent data from the United States Census Bureau, however, report that as of 2010, the City's population has nearly doubled to 175,396 residents.

14. The growth of the Latino community has outpaced the growth of all other ethnic groups by a considerable margin. For example, in 1990, the City's Latino population was

20,467—approximately 20.5 percent of the total population. Ten years later, the number of Latinos in the City had more than doubled to 42,038, comprising 33 percent of the total population. The Census data as of 2010 shows that the City's Latino population is 74,893—approximately 42.7 percent of the total population. Clearly, the City's ethnic composition has shifted dramatically. Sadly, this change has not been reflected in the GPCC's composition.

C.      **The City's Electoral System**

15.     The GPCC is comprised of eight members and the mayor, each of whom have a single vote on matters before the GPCC. Six councilmembers are elected from single-member districts. The remaining two councilmembers are elected at large. The mayor is also elected at large. Councilmembers serve three-year terms, which are staggered according to whether the seat is an odd or even number.

16.     To prevail in a GPCC election, a candidate must receive a majority of the votes cast for that seat. If no candidate receives a majority of the votes in the first election, a run-off election between the top two candidates determines the winner.

17.     The practical effect of the Electoral System is that six of the GPCC's nine elected officials reside in the south of the City in just three election districts—far removed from the Latino-dense districts in the north of the City.

D.      **2011 Redistricting**

18.     After the elections in 2011 and in response to the 2010 Census, the City redrew its six single-member districts. The Census revealed that certain districts had become disproportionately more populated. Accordingly, the City redrew its districts to solve the population variance issues. Unfortunately, the newly redrawn districts exacerbated the vote-diluting effects on the Latino community because, as the City admitted, the Electoral System reduced the number of predominately Latino districts from three to two.

E. **The Discriminatory Effects Of The City's Electoral System**

19. The 2010 Census and the 2012 American Community Survey ("ACS") reflect that the citizen voting age population of the City was approximately 30 percent Latino. Based on this percentage, one could expect to find two Latino members on the GPCC. However, there are none. Because whites vote as a bloc, every Latino candidate for the GPCC since at least 1990 has been defeated.

20. The 2010 Census and the 2012 ACS data reveal that, if the City were to adopt a system of eight single-member districts, the Latino population is sufficiently large and geographically compact so that two single-member electoral districts could be drawn in which the majority of eligible voters are Latino. Unfortunately, the City maintains a system which fractures the Latino voting base, depriving the Latino community of a fair opportunity to elect the candidates of its choice.

21. Latinos in the City are a politically unified group that vote cohesively as a bloc.

22. In the GPCC elections, bloc voting is prevalent in elections where a white candidate and a minority candidate are competing against one another. For example, white voters vote consistently as a bloc, which usually functions as a veto to the candidates of choice of the Latino Community. That pattern of racially polarized voting leads to limited representation of, and indifference to, the interests of the Latino community.

23. In addition, Latinos in the City have been subjected to official and private discrimination on the basis of race and ethnicity in, among other things, employment, education, health services, and housing. Those acts of discrimination heighten the vote dilution caused by the Electoral System.

24. In fact, that historical discrimination against Latinos in education, housing, employment, and health services are significant contributors to the lower socioeconomic status of Latinos in the City.

25. The Electoral System is characterized by the use of practices and procedures that impair Latino electoral success, including: (1) at-large election procedures for two of the eight seats; (2) staggered election terms; and (3) a majority vote requirement. There is no legitimate reason to continue those practices. Indeed, municipalities across the country are moving away from the archaic practices maintained by the City, favoring instead practices which promote equal participation in the political process.

**F.    Without Court Intervention, The Current Discriminatory Electoral System Will Remain In Place.**

26. The Electoral System violates the Act. Unless this Court directs the City to design an electoral system that does not unlawfully dilute the votes of Latino voters, the current discriminatory Electoral System will continue. Indeed, for at least twenty-two years, the Latino community has been unable to elect a Latino candidate of its choice in the City.

27. The 2011 redistricting process presented the City with an opportunity to bring the Electoral System into compliance with the Act. Unfortunately, the City ignored its obligations under the Act and focused instead on the concerns of incumbents regarding re-election. Indeed, council members have disclosed that the goal of the re-districting effort was "to rearrange the districts to keep Council Member districts almost the same," and to "preserve incumbency consistency." Rather than carefully considering its obligations to its burgeoning Latino population, the City focused on ways to maintain the existing power structure. It is precisely that business-as-usual entitlement that dilutes the Latino vote, and hamstrings the opportunity for equal political participation.

## V.

## CLAIMS

### A. Count One: Violation Of Section 2 Of The Voting Rights Act Of 1965

28. Rodriguez hereby incorporates the allegations in paragraphs 1-27 as if fully set forth herein.

29. The Latino community in the City is sufficiently large and geographically compact such that two properly apportioned single-member electoral districts can be drawn in which Latinos would constitute a majority of eligible voters.

30. Latinos in the City constitute a politically unified group that votes cohesively as a bloc.

31. The GPCC elections are characterized by racially polarized voting in which the predominately white voting bloc votes in a way that usually defeats the Latino community's Latino candidates of choice.

32. Based on the totality of past and present circumstances, the Electoral System impermissibly dilutes the Latino vote, and stymies the Latino community's ability to participate fully in the election process.

33. That vote dilution violates the Act.

34. Unless enjoined by this Court, the Electoral System will remain in force, and the City will, therefore, continue to violate the Act by administering, implementing, and conducting future elections for members of the GPCC using the Electoral System.

### B. Count Two: Permanent Injunctive Relief

35. Rodriguez hereby incorporates the allegations in paragraphs 1-27 as if fully set forth herein.

36. Rodriguez's request for permanent injunctive relief to enjoin the City from administering, implementing, and conducting future elections for members of the GPCC using the Electoral System is authorized by the Voting Rights Act, as well as principles of equity.

37. Without the Court's intervention, the Defendants' actions and Electoral System will cause Latino voters irreparable harm because the Electoral System denies Latino voters the opportunity to fully participate in the electoral process by diluting the strength of their vote, for which there is no adequate remedy at law.

38. Rodriguez, therefore, requests that the Court enter a permanent injunction, enjoining Defendants from administering, implementing, and conducting future elections for the GPCC based on the Electoral System.

C. **Count Three:  Attorneys' Fees And Costs**

39. Rodriguez hereby incorporates the allegations in paragraphs 1-27 as if fully set forth herein.

40. As a result of the City's failure to address the shortcomings of the Electoral System under the Act, Rodriguez has been required to obtain the undersigned counsel to prosecute and present the claims asserted herein.

41. This action is a suit to enforce the voting guarantees of the Act. Pursuant to 52 U.S.C § 10310(e) and 42 U.S.C. § 1988, Rodriguez may recover reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses as part of his costs for bringing this lawsuit.

## VI.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for Plaintiff and against Defendants, awarding Plaintiff the following relief:

a. Declaring that the Electoral System violates Section 2 of the Voting Rights Act;

b. Enjoining the City, its agents, and all persons acting in concert with any of them, from administering, implementing, or conducting any future elections for the Council under the Electoral System;

c. Ordering Defendants to devise an election plan and an implementation schedule for that plan that remedies the violation of Section 2. If Defendants fail to devise such a plan, the Court should order into effect a new election plan of its own, designed to remedy the violation of Section 2 and order elections to be held pursuant to that plan as promptly as possible;

d. Awarding reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses pursuant to 52 U.S.C § 10310(e) and 42 U.S.C. § 1988 and any other applicable statute;

e. Awarding Costs of Court; and

f. Granting any other relief, at law or in equity, to which Rodriguez may be entitled and which this Court deems just and proper.

DATED: March 4, 2015.   Respectfully submitted,

**BICKEL & BREWER STOREFRONT, PLLC**

By: */s/ Gregory A. Brassfield*
**William A. Brewer III**
State Bar No. 02967035
wab@bickelbrewer.com
**Jack G. B. Ternan**
State Bar No. 24060707
jgt@bickelbrewer.com
**Gregory A. Brassfield**
State Bar No. 24079900
gxb@bickelbrewer.com

1717 Main Street
Suite 4800
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF**